

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

UNITED STATES OF AMERICA

v.                                         Criminal No. 3:11CR57

LOUIS A. BROWN

**MEMORANDUM OPINION**

Louis A. Brown, a federal inmate proceeding <u>pro</u> <u>se</u>, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 40).[1] Brown contends that his counsel was ineffective both as to the plea that he entered (guilty) and as to the sentencing process.[2] Specifically, Brown demands relief because:

> Claim One:     "Petitioner's guilty plea was not knowing, intelligent, and voluntary, where it was tendered under misadvice of counsel, who erroneously insisted Petitioner was a career offender; and thus, facing a 'mandatory minimum sentence' or 'life imprisonment.' Counsel's 'gross misinformation about law' was tantamount to no counsel at all during critical stage of proceedings, i.e., constitutionally ineffective assistance of counsel." (§ 2255 Mot. 4.)

---

[1] The Court employs the pagination assigned to Brown's submissions by the CM/ECF docketing system. The Court corrects the spelling, punctuation, capitalization, and spacing in the quotations from Brown's submissions.

[2] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

Claim Two:        "That in light of intervening Supreme Court
                  authority (Carachuri-Rosendo [v. Holder, 560
                  U.S. 563 (2010)], in existence prior to
                  guilty plea), that has superseded
                  controlling Fourth Cir. Precedent—remanding
                  Simmons [v. United States, 649 F.3d 237 (4th
                  Cir. 2011)] which in turn superseded [United
                  States v.] Harp [406 F.3d 242 (4th Cir.
                  2005)]—defining qualifying 'prior offense'
                  for the purpose of career offender as one
                  'punishable by imprisonment for more than
                  one year,' Petitioner's counsel must be
                  found as constitutionally ineffective where
                  [s]he encouraged Petitioner to tender a
                  guilty plea under the erroneous presumption
                  that he was a career offender (i.e., a
                  failure to investigate), U.S.C.A. 6th. (Id.
                  at 5.)

Claim Three:      "Trial counsel was constitutionally
                  ineffective due to (1) her failure to raise
                  proper objections and or motion the Court in
                  opposition to enhancements for 'obstruction
                  of justice' imposed pursuant to [United
                  States Sentencing Guideline] § 3C1.1, and
                  the Government's joint motion seeking to
                  deny Petitioner's three point reduction for
                  'acceptance of responsibility'; and (2) that
                  counsel had a conflict of interest, and
                  therefore, could not represent the
                  Petitioner in obstruction conduct (i.e.,
                  that Pet. acted with aid and advice of
                  counsel), U.S.C.A. 5th & 6th. (Id. at 7.)[3]

---

[3] As discussed infra in Part III.B, the Court construes
Claim Three as including three parts: (a) counsel was deficient
for not arguing that the Government "failed to produce
affirmative evidence establishing [William] Gant was in fact
[Brown's] drug supplier" (Mem. Supp. § 2255 Mot. 23, ECF No.
41); (b) counsel failed to advise Brown not to mail out the
Federal Bureau of Investigation Form 302s or raise her
complicity in the matter before the Court (id.); and, (c)
counsel was deficient for not arguing that the Government failed
to prove that the 302 forms were posted on restroom walls at
Westmoreland County convenience stores (id. at 23-24).

Brown has filed a timely motion for leave to amend his § 2255 Motion ("Motion to Amend," ECF No. 42), which the Court will grant.  Brown raises the following two claims:

> Claim Four: "Trial counsel was constitutionally ineffective due to her failure to motion the Court pursuant to the 'Fair Sentencing Act of 2010' ["FSA"] resulting in reductions in the Guidelines _viz_. [United States Sentencing Guideline] § 2D1.1 for cocaine base.  Where permanent amendments implementing underlying act were promulgated on April 6, 2011; effective as of Nov. 1, 2011.  But, that Petitioner's sentencing hearing occurred on November 15, 2011, without benefiting from any of the Act's new proscriptions, e.g., like the crack cocaine to powder cocaine newly established 20 to 1 ratio; _U.S.C.A. 6th_."  (Mem. Supp. Mot. to Amend 2, ECF No. 43.)

> Claim Five: "Trial counsel was constitutionally ineffective due to her failure to investigate, motion the Court, and or object to sentencing Court['s] alleged 'correction' of previously imposed term of supervised release (increased by 1 yr.); and further ineffective due to her failure to file a notice of appeal, and actual appeal of supervised release revocation proceeding after being requested to do so, where the alleged 'correction' has: (1) effect[ed] a substantive change to the original punishment and related judgment, (2) imping[ed] movant's 'fundamental right to finality of judgment' at the time original term was entered, and (3) violated movant's right to be free from double jeopardy in punishment, _U.S.C.A. 5th & 6th_."  (_Id._ at 5 (alteration in original).)

The Government has responded, asserting that Brown's claims lack merit. (ECF No. 58.) Brown has filed a Reply. (ECF No. 61.)

By Memorandum Order entered on July 31, 2015, the Court noted that it could not "conclude from the record before it whether or not counsel was ineffective for failing to challenge Brown's career offender designation." (ECF No. 64, at 3.) Accordingly, the Court directed counsel for the Government to "file a supplemental response addressing whether Brown's 1999 conviction was properly counted as a predicate conviction for career offender status, and whether Brown's counsel was ineffective for failing to challenge the career offender designation." (Id.) The Court also directed that Brown should submit any supplemental response he wished to file. (Id.) The Government filed its supplemental response on August 20, 2015 ("Gov't's Suppl. Resp.," ECF No. 65). The Court received Brown's supplemental response on September 8, 2015 ("Pet'r's Suppl. Resp," ECF No. 67). For the reasons stated below, the Court will appoint counsel to represent Brown for further proceedings on Claims One, Two, and a portion of Claim Three, and dismiss the remaining claims.

4

# I.  PROCEDURAL HISTORY

On February 24, 2011, a grand jury charged Brown with four (4) counts of distribution of cocaine base and one (1) count of possession with intent to distribute cocaine base. (Indictment 1-4, ECF No. 1.)  On June 27, 2011, Brown entered into a Plea Agreement and pled guilty to Count One, which charged him with distribution of cocaine base. (Plea Agreement ¶ 1, ECF No. 12.)

The Plea Agreement reflected that Brown understood that the maximum penalty for Count One was "twenty years of imprisonment, a fine of $1,000,000, a special assessment, and three years of supervised release." (Plea Agreement ¶ 1.)  Brown agreed that the Court would determine his actual sentence "in accordance with Title 18, United States Code, Section 3553(a)," and that any estimate he may have received from counsel was "a prediction, not a promise." (Id. ¶ 5.)  Brown understood that he could not withdraw his guilty plea based upon the actual sentence imposed. (Id.)

During his Rule 11 proceedings, Brown confirmed his understanding regarding the maximum penalty for Count One. (June 27, 2011 Tr. 5.)  He stated that he had discussed the Sentencing Guidelines with counsel. (June 27, 2011 Tr. 6.)  Brown understood that the Court would consider the applicable Sentencing Guidelines in determining his sentence. (June 27,

5

2011 Tr. 19-22.)   He confirmed that any estimate he received from counsel about his sentence was a prediction, not a promise. (June 27, 2011 Tr. 21.)

In the pre-sentence report ("PSR"), the Probation Officer determined that a two-level enhancement for obstruction of justice should apply.   (PSR ¶ 29, ECF No. 20.)   The Probation Officer further believed that given Brown's post-plea conduct, Brown should not receive a three-point reduction for acceptance of responsibility.   (Id. ¶ 30.)   The Probation Officer also determined that Brown qualified for a sentence enhancement as a career offender for his prior felony convictions of Delivery of a Controlled Substance on May 6, 1999, and Use of a Firearm in or During a Crime of Violence on April 13, 2000.   (Id. ¶ 70.) On October 4, 2011, Brown's counsel filed objections to the Probation Officer's determinations concerning obstruction of justice and acceptance of responsibility.   (ECF No. 22.)

During the sentencing hearing on November 10, 2011, Brown's counsel agreed that Brown was a career offender.   (Nov. 10, 2011 Tr. 4.)   She objected to the obstruction of justice enhancement and to the denial of a reduction for acceptance of responsibility, and presented testimony, including testimony from Brown himself, to support the objections.   (Nov. 10, 2011 Tr. 4-19, 35-44, 51-53, 60-65.)   The Court overruled the

6

objections.  (Nov. 10, 2011 Tr. 58, 65.)  On November 16, 2011, the Court entered judgment against Brown and sentenced him to 240 months of imprisonment.[4]  (J. 2, ECF No. 29.)

Brown, through counsel, filed a Notice of Appeal on November 29, 2011.  (ECF No. 31.)  Counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), and Brown filed a pro se supplemental brief, claiming that counsel was ineffective, and that the Court erred by:  (1) sentencing him as a career offender, (2) applying the obstruction of justice enhancement, and, (3) denying him a downward adjustment for acceptance of responsibility.  United States v. Brown, 474 F. App'x 244, 244-45 (4th Cir. 2012).  The United States Court of Appeals for the Fourth Circuit declined to consider Brown's claims of ineffective assistance of counsel and affirmed the Court's judgment.  Id. at 245.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient

_____

[4]  Subsequently, on January 6, 2012, Brown appeared before the Honorable James R. Spencer for a supervised release violation hearing in Case No. 3:99CR274.  Judge Spencer revoked Brown's supervised release in that matter and sentenced him to thirty-six (36) months of imprisonment, to be served consecutively to any other sentence imposed.  (Criminal Action No. 3:99CR274, ECF No. 49.)

performance prejudiced the defense.   Strickland v. Washington, 466 U.S. 668, 687 (1984).  To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689).  The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.    A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.   In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice.   Id. at 697.

In the context of a guilty plea, the Supreme Court has modified this second prong of Strickland to require the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."   Hill v. Lockhart, 474 U.S. 52, 59 (1985).  Of course, in conducting the foregoing inquiry, the representations of the defendant, his lawyer, and

the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).   In light of the strong presumption of verity that attaches to a petitioner's declarations during his plea proceedings, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted).   Thus, the Fourth Circuit has admonished that, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."   Id. at 221-22.   No circumstances exist here that would lead the Court to consider Brown's prior sworn statements as other than truthful.

### A. Claims One And Two—Counsel's Performance Regarding Guilty Plea And Career Offender Designation

In Claim One, Brown asserts that his "guilty plea was not knowing, intelligent, and voluntary, where it was tendered under misadvice of counsel, who erroneously insisted Petitioner was a career offender; and thus, facing a 'mandatory minimum sentence' or 'life imprisonment.'" (§ 2255 Mot. 4.)   In Claim Two, Brown contends that his "counsel must be found as constitutionally ineffective where [s]he encouraged Petitioner to tender a guilty plea under the erroneous presumption that he was a career offender." (Id. at 5.)   Brown also argues that his "resulting sentence is the product of counsel's failure to investigate or explore alternative guideline sentence options . . . ." (Mem. Supp. § 2255 Mot. 11, ECF No. 41.)   Specifically, Brown contends that, "because of counsel's . . . belief that [Brown] qualified as a career offender[,] she unreasonably relinquished, waived, or forfeited all opportunities to investigate, research, or examine any potential alternative sentences commensurate with the U.S. Sentencing Guidelines Sentencing Table for controlled substances; and thereby motion the Court." (Id. at 17.) Because Claims One and Two are virtually identical, the Court will consider them together.

Before sentencing, the Probation Officer concluded that Brown qualified as a career offender, stating:

> The defendant qualifies for a sentence enhancement under the Career Offender section, as defined in U.S.S.G. § 4B1.1, by virtue of being 18 years old at the time of the instant offense of conviction, the instant offense being a felony conviction for a controlled substance offense, and the defendant having at least two prior felony convictions of either a crime of violence or a controlled substance offense, to wit: Delivery of a Controlled Substance on May 6, 1999; and Use of a Firearm in or During a Crime of Violence on April 13, 2000.

(PSR ¶ 70.) During the sentencing hearing on November 10, 2011, the parties agreed that Brown was a career offender. (Nov. 10, 2011 Tr. 4.) Before application of the career offender designation, Brown's criminal history placed was Criminal History Category IV. (PSR, Wksht. D at 1.) However, the career offender designation placed Brown in Criminal History Category VI. (Id.) Brown's Sentencing Guidelines range called for 262 to 327 months of incarceration; however, he could only receive a maximum of 240 months because of the statutory maximum sentence provided by 21 U.S.C. § 841(b)(1)(C). (Id.)

Under the Sentencing Guidelines,

> [a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

11

United States Sentencing Guidelines Manual § 4B1.1(a) (U.S. Sentencing Comm'n 2010) ("USSG"). In support of his argument that counsel was ineffective during guilty plea proceedings and sentencing, Brown contends that his 1999 conviction for Delivery of a Controlled Substance was improperly counted as a predicate offense under § 4B1.1(a). (Mem. Supp. § 2255 Mot. 10.) The PSR states that on May 6, 1999, Brown received "8 months to 1 year, 11 months of imprisonment; 2 years of probation" for this conviction. (PSR ¶ 54.)

The "determination of whether convictions are counted under § 4B1.1 is governed by the provisions of [USSG] § 4A1.2." United States v. Romary, 246 F.3d 339, 342 (4th Cir. 2001) (citation omitted). Section § 4A1.2 provides in pertinent part:

**(e)   Applicable Time Period**

(1)   Any prior sentence of imprisonment exceeding one year and one month was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior offense of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

(2)   Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

(3)   Any prior sentence not within the time periods specified above is not counted.

12

USSG § 4A1.2(e)(1)-(3).   Because Brown did not receive a sentence of imprisonment that exceed one year and one month, his 1999 conviction did not count under § 4A1.2(e)(1).   Moreover, because Brown's earliest relevant conduct occurred in July 2010 (PSR at 12), the sentence for Brown's 1999 conviction was not imposed within ten years of the commencement of the federal offense, as required for a conviction to count under § 4A1.2(e)(2).   The Government now concedes that Brown's 1999 conviction "did not meet the requirements for the career offender advisory guidelines." (Gov't's Supp. Resp. 1.)[5]

Given the Government's concession that Brown was improperly sentenced as a career offender, the Court finds that counsel acted deficiently in advising Brown that he would be classified as such.   See United States v. Lewis, 477 F. App'x 79, 82 (4th

---

[5] The Government goes on to argue that Brown is not entitled to relief because a claim concerning misapplication of the Sentencing Guidelines is not cognizable under § 2255. (Gov't's Supp. Resp. 19.)   While the Government is correct that an erroneous "career offender designation [is] not a fundamental defect that inherently results in a complete miscarriage of justice," United States v. Foote, 784 F.3d 931, 940 (4th Cir. 2015), Brown has not raised a freestanding claim of sentencing error.   Rather, the Court directed the parties to address Brown's suggestion that his "counsel was ineffective for failing to challenge the career offender designation," not whether Brown's claim was cognizable.   (ECF No. 64, at 3.)   The Government has wholly failed to address the issue of whether counsel was ineffective for failing to challenge the career offender designation.

Cir. 2012) (concluding that counsel's misadvice that defendant would qualify for both a career offender enhancement and a mandatory life sentence "was plainly deficient under Strickland"). However, from the record currently before the Court, it is not possible to determine whether counsel's deficient advice on that score prejudiced Brown's guilty plea and sentencing. Accordingly, the Court will appoint counsel to represent Brown in further proceedings on Claims One and Two.

**B. Claim Three—Counsel's Performance Regarding Obstruction Of Justice Enhancement**

Essentially, Claim Three consists of three parts: (a) counsel was deficient for not arguing that the Government "failed to produce affirmative evidence establishing [William] Gant was in fact [Brown's] drug supplier" (Mem. Supp. § 2255 Mot. 23); (b) counsel failed to advise Brown not to mail out the Federal Bureau of Investigation Form 302s or raise her complicity in the matter before the Court (id.); and, (c) counsel was deficient for not arguing that the Government failed to prove that the 302 forms were posted on restroom walls at Westmoreland County convenience stores (id. at 23-24). For the reasons set forth below, the Court will dismiss Claims 3(a) and 3(c), and appoint counsel for Claim 3(b).

14

### 1.    Background

The PSR recommended imposition of a two-level enhancement for obstruction of justice.  (PSR ¶ 29.)   The Probation Officer based this finding on the following facts:

> Through  discovery,  copies  of  Federal  Bureau  of
> Investigation  (FBI)  Forms  302  were  received  by  the
> defendant.   These  forms  identify  information  provided
> by  cooperating  sources,  most  importantly  the  sources'
> identities.   Since  the  defendant's  guilty  plea  was
> accepted  by  the  Court  on  June  27,  2011,  the  defendant
> mailed  three  copied  sets  of  the  Forms  302  to  his
> mother.   Each  set  was  labeled  as  to  the  defendant's
> intended  recipient  to  include  his  drug  supplier  and
> two  other  individuals.    The  three  packages  were
> delivered  by  mail  to  the  defendant's  mother  and  were
> distributed  as  the  defendant  requested.   In  a  recorded
> telephone  call  from  the  jail,  the  defendant  explained
> to  an  individual  that  he  wanted  the  identities  of  who
> had  been  "telling"  on  him  known  to  others  in  the
> community,  specifically,  his  drug  supplier.   Based
> upon  information  provided  by  FBI  SA  Bruce  Hough,  the
> defendant's  drug  supplier  received  one  of  the  copied
> sets,  who  in  turn  contacted  one  of  the  government's
> witnesses.    In  addition,  the  forms  were  posted  on
> restroom  walls  in  convenience  stores  throughout
> Westmoreland County. . . .

(Id.)  The Probation Officer further determined that, given this conduct, Brown should not receive any reduction for acceptance of responsibility.  (Id. ¶ 30.)

Counsel filed objections to the PSR, arguing that Brown's act of mailing the 302s to his mother did not constitute obstruction of justice, and that Brown should still receive the three-level reduction for acceptance of responsibility.  (ECF

No. 22, at 3-6; see also Gov't's Resp. Ex. 1 ("Maguire Aff.") ¶ 5, ECF No. 58-1.)   During Brown's sentencing hearing, counsel presented testimony from Linda McGrew, an investigator for the Federal Public Defender's office, to support her objections. (Nov. 10, 2011 Tr. 9-19, see also Maguire Aff. ¶ 5.)   Counsel also vigorously cross-examined the Government's witness, Special Agent Bruce Hough.   (Nov. 10, 2011 Tr. 28-35.)   Moreover, counsel thoroughly argued against the enhancement and the resulting loss of the three-point reduction for acceptance of responsibility.   (Nov. 10, 2011 Tr. 35-44, 51-53.)   After the Court overruled counsel's objection, but before sentence was imposed, counsel presented testimony from Brown on the issue. (Nov. 10, 2011 Tr. 60-62.)

### 2.   Claim Three (a)

In Claim Three (a), Brown alleges that counsel was deficient for not arguing that the Government had "falsely claimed Mr. Gant was [Brown's] drug supplier . . . [a]nd . . . failed to produce affirmative evidence establishing Gant was in fact [Brown's] drug supplier."   (Mem. Supp. § 2255 Mot. 23.) However, during his sentencing hearing, Brown himself testified that Gant "supplied [him], but Gant was not [his] major supplier."   (Nov. 10, 2011 Tr. 63.)   When the Government asked again if Gant was a supplier, Brown responded by stating: "I'm

16

going to take the Fifth on that." (Nov. 10, 2011 Tr. 63.) Given Brown's admission that Gant was one of his suppliers, counsel cannot be deficient for failing to have raised a meritless argument that contradicts Brown's testimony. See United States v. Moore, 934 F. Supp. 724, 731 (E.D. Va. 1996). Because Brown failed to establish deficiency of counsel and resulting prejudice, Claim Three (a) will be dismissed.

### 3.   Claim Three (c)

In Claim Three (c), Brown claims that counsel was deficient for failing to argue that the Government did not "support through material evidence or any witness s testimony its false claim that there was an incident in which 'F.B.I. 302s' were posted on the restroom wall [at] a Westmoreland County convenience store." (Mem. Supp. § 2255 Mot. 23-24.) However, during Brown's sentencing hearing, counsel, through Ms. McGrew's testimony, presented evidence to rebut the Government's contention that copies of the 302s had ultimately been posted in restrooms in convenience stores in Westmoreland County. Specifically, Ms. McGrew testified that she interviewed staff at the two main convenience stores and asked if they had ever seen 302s hanging in the restrooms. (Nov. 10, 2011 Tr. 16-19.) Everyone she interviewed stated that they had never seen them, and that it was against store policy to hang anything in

the restrooms. (Nov. 10, 2011 Tr. 17-19.) It is difficult to envision what more counsel could have presented on this issue. And, Brown has offered nothing else for consideration. Because Brown fails to establish deficiency of counsel and resulting prejudice, Claim Three (c) will be dismissed.

### 4. Claim Three (b)

In Claim Three (b), Brown contends that counsel was ineffective for failing to inform the Court that she "made the copies of discovery, and . . . was informed by [Brown], in advance of controversy, of his intent to mail the materials out to family and friends. But, that counsel never advised against the mailing . . . ." (Mem. Supp. § 2255 Mot. 23.)

During her cross-examination of Special Agent Hough, counsel established that she had received the 302s that were ultimately provided to Brown from the Government as part of discovery. (Nov. 10, 2011 Tr. 28-29.) Counsel now "admits that she provided copies of the witness statements to Mr. Brown, and knew he was going to mail them to his mother." (Maguire Aff. ¶ 4.) Counsel further acknowledges that she "never advised Mr. Brown that he could be charged with obstructing justice, or lose the three level reduction for acceptance of responsibility for sending the copies of the witness statements to his mother." (Id.)

18

The Court is distressed, apparently more so than the Government, that counsel chose to provide Brown copies of the 302s, which contained "information provided by cooperating sources, most importantly the sources' identities." (PSR ¶ 29.) Even more troubling is the fact that counsel chose to do so knowing that Brown would mail these copies to his mother, potentially placing the cooperating sources at risk. Indeed, Ms. McGrew testified that, after Brown's mother received the 302s, she provided copies to William Gant, one of Brown's suppliers, on a night when he was playing cards at Brown's mother's house. (Nov. 10, 2011 Tr. 11-12.) But for counsel's actions, Brown would have been unable to have provided his supplier with concrete evidence of the individuals cooperating with the Government in an effort to root out the drug trafficking in Westmoreland County.

Given this record and counsel's failure to explain why she provided Brown with copies of 302s when she knew he intended to transmit the documents to others who could jeopardize the ongoing investigation, the Court cannot conclude that counsel's actions fell within "the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Accordingly, the

Court will appoint counsel to represent Brown in further proceedings on Claim Three (b).[6]

In assessing counsel's performance in these circumstances, it appears that the Court may require testimony from the Assistant United States Attorney who handled the prosecution, S. David Schiller. Specifically, the Court may require testimony from Mr. Schiller with respect to, *inter alia*, whether the Government placed any restrictions, expressed or implied, upon the provision of the 302s to Brown's counsel. Accordingly, the Government shall assign new counsel to continue to litigate this matter.

### C. Claim Four—Counsel's Performance Regarding Fair Sentencing Act

In Claim Four, Brown asserts that counsel "was constitutionally ineffective due to her failure to motion the Court pursuant to the 'Fair Sentencing Act of 2010' resulting in reductions in the Guidelines *viz*. USSG § 2D1.1 for cocaine base." (Mem. Supp. Mot. Amend 2.) According to Brown, "counsel failed to take advantage of numerous opportunities to motion the

---

[6] Brown also contends that "counsel acted in an effort to prevent his side of the story from being revealed to the sentencing court during the Nov. 10th, 20[11], sentencing hearing." (Mem. Supp. § 2255 Mot. 24.) However, the record reflects that Brown testified during the sentencing hearing and provided "his side of the story" to the Court. (Nov. 10, 2011 Tr. 60-65.)

Court in seeking whatever conceivable benefits emanat[ed] from within the Act." (Id.)

The FSA[7] became effective on August 3, 2010. See Dorsey v. United States, 132 S. Ct. 2321, 2329 (2012). Among other things, the FSA

> instructed the [Sentencing] Commission to "make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law." And it directed the Commission to "promulgate the guidelines, policy statements, or amendments provided for in this Act as soon as practicable, and in any event not later than 90 days" after the new Act took effect.

Id. (internal citations omitted). The Sentencing Commission "promulgated conforming emergency Guidelines amendments that became effective on November 1, 2010. Id. (citing 75 Fed. Reg. 66188 (2010)). A permanent version took effect on November 1, 2011. Id. (citing 76 Fed. Reg. 24960 (2011)).

Thus, at the time of Brown's sentencing on November 10, 2011, the United States Sentencing Guidelines Manual already reflected amended drug quantity amounts in the base offense levels brought about by directives in the FSA. See USSG § 2D1.1(c)(1)(4) (Supp. 2010). Counsel acknowledges that "she did not ask that Mr. Brown receive any leniency under the [FSA] because she was of the opinion that it did not apply to

---

[7] Pub. L. No. 111-120, 124 Stat. 2372.

individuals that qualified for career offender treatment under the Guidelines." (Maguire Aff. ¶ 7.) Because Brown's Sentencing Guidelines range had already been calculated using a drug weight based upon the benefits of the FSA, counsel cannot be deficient for not arguing that the FSA should apply. See Moore, 934 F. Supp. at 731.[8] Moreover, Brown has not demonstrated prejudice from counsel's failure to raise this argument. Accordingly, Claim Four will be dismissed. However, Brown will be permitted to raise arguments regarding the drug weight calculation in conjunction with Claims One and Two during further proceedings in this matter.

### D.   Claim Five—Counsel's Performance Regarding Supervised Release Revocation Proceedings

In Claim Five, Brown contends that "[t]rial counsel was constitutionally ineffective due to her failure to investigate, motion the court, and or object to sentencing Court['s] alleged 'correction' of previously imposed term of supervised release (increased by 1 yr.)." (Mem. Supp. Mot. Amend 5.) Brown further alleges that counsel was ineffective for failing to file a notice of appeal with respect to the sentence imposed

---

[8] Brown contends that the Court asked counsel whether she "intended to seek application of the [FSA] for the purpose of downward departures in the base offense level," and that counsel "responded in the negative." (Mem. Supp. Mot. Amend 2-3.) A review of the transcript of Brown's sentencing hearing reveals that the Court never asked counsel that question.

following revocation of his supervised release in 3:99CR274. (Id.)

In 1999, in this Court, Brown pled guilty to one count of being a felon in possession of a firearm (Count One), and one count of use of a firearm in or during a crime of violence (Count Four). See Minute Entry, United States v. Brown, No. 3:99CR274 (E.D. Va. Dec. 21, 1999) (ECF No. 13). The late Honorable Richard Williams entered judgment against Brown on April 13, 2000, and sentenced him to 96 months of imprisonment on Count One, and 60 months of imprisonment, to run consecutively, on Count Four. See Minute Entry, United States v. Brown, No. 3:99CR274 (E.D. Va. Apr. 13, 2000) (ECF No. 19). Judge Williams also imposed a two-year term of supervised release. Id.

On October 15, 2010, a Probation Officer filed a petition to revoke supervised release against Brown, alleging that Brown had committed three violations of his supervised release: "1. Failure to satisfactorily participate in a drug treatment program; 2. Failure to submit monthly supervision reports as directed; and 3. Failure to notify the probation officer of a change of residence." (Gov't's Resp. 32.) "On January 13, 2011, the petition was amended to add an additional ground that

23

the defendant had committed a crime, being the narcotics dealing." (Id. at 32-33.)

On January 6, 2012, Brown appeared before the Honorable James Spencer for a final revocation hearing in Criminal Action No. 3:99CR274. Brown "entered a guilty plea to the violations as charged in the supervised release petition." (Gov't's Resp. 15.) Judge Spencer "imposed [a] term of 36 months incarceration to be served consecutive to any other sentence already imposed." (Id.)

Brown now contends that his counsel, who represented him during both the supervised release revocation proceedings and the previously discussed guilty plea proceedings, rendered ineffective assistance in conjunction with that matter. However, "[a] moving party who seeks relief from more than one judgment must file a separate [§ 2255] motion covering each judgment." Rule 2(d), Rules Governing Section 2255 Proceedings for the United States District Courts. Because Claim Five seeks relief from the revocation sentence imposed in 3:99CR274, Brown must bring Claim Five in a § 2255 motion in that action. Accordingly, Claim Five will be dismissed without prejudice to any right that Brown may have to raise that claim in a collateral proceeding filed in Criminal Action No. 3:99CR274.

24

## V.   OUTSTANDING MOTIONS

Brown's Motion for Status Hearing on 28 U.S.C. § 2255 Motion and Summary Judgment (ECF No. 51) will be denied as moot. Brown has also filed a Motion for Stay in 28 U.S.C. § 2255 Motion Proceedings ("Motion for Stay," ECF No. 62). Brown sought a stay pending the United States Court of Appeals for the Fourth Circuit's en banc decision in Whiteside v. United States, 775 F.3d 180 (4th Cir. 2014). The Government filed a response concurring with Brown's motion. (ECF No. 63.) Because the Fourth Circuit's en banc decision was issued on December 19, 2014, Brown's Motion for Stay (ECF No. 62) will be denied as moot.

## VI.   CONCLUSION

For the foregoing reasons, the Court will appoint counsel to represent Brown during further proceedings on Claims One, Two, and Three (b). Furthermore, the Government shall assign new counsel to continue to litigate this matter on its behalf.

Claims Three (a), Three (c), and Four will be dismissed with prejudice. Claim Five will be dismissed without prejudice to any right that Brown may have to raise that claim in a collateral proceeding filed in Criminal Action No. 3:99CR274. Brown's motion for leave to amend his § 2255 motion (ECF No. 42)

will be granted.   Brown's Motion for Status Hearing on 28 U.S.C. § 2255 Motion and Summary Judgment (ECF No. 51) will be denied as moot.   Brown's Motion for Stay (ECF No. 62) will be denied as moot.

The Clerk is directed to send a copy of the Memorandum Opinion to Brown and counsel of record.

It is so ORDERED.

/s/

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April ___, 2016

26