IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                        Criminal No. 3:11CR57

LOUIS A. BROWN

## MEMORANDUM OPINION

Louis A. Brown, a federal inmate then proceeding pro se, submitted a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (§ 2255 Motion," ECF No. 40).[1]  This matter is before the Court after an evidentiary hearing on Brown's claims that he was denied the effective assistance of counsel during his sentencing proceedings.  The matter is ripe for disposition.  For the following reasons, the Court will grant in part and deny in part Brown's § 2255 Motion.

## I.    PROCEDURAL HISTORY

On February 24, 2011, a grand jury charged Brown with four counts of distribution of cocaine base and one count of possession with intent to distribute cocaine base.  (Indictment 1-4, ECF No. 1.)  On June 27, 2011, Brown entered into a Plea

---

[1] The Court employs the pagination assigned to Brown's pro se submissions by the CM/ECF docketing system.  The Court corrects the spelling, punctuation, capitalization, and spacing in the quotations from Brown's pro se submissions.

Agreement and pled guilty to Count One, which charged him with distribution of cocaine base. (Plea Agreement ¶ 1, ECF No. 12.)

In the Pre-Sentence Investigation Report ("PSR," ECF No. 20), the Probation Officer determined that a two-level enhancement for obstruction of justice should apply. (Id. ¶ 29.) The Probation Officer further believed that, given Brown's post-plea conduct, Brown should not receive a three-point reduction for acceptance of responsibility. (Id. ¶ 30.) The Probation Officer also concluded that Brown qualified to be sentenced as a career offender. (Id. ¶ 70.) On October 4, 2011, counsel for Brown (Mary Maguire) filed objections to the Probation Officer's determinations concerning obstruction of justice and acceptance of responsibility. (ECF No. 22.)

During the sentencing hearing on November 10, 2011, counsel for Brown[2] agreed that he was a career offender. (Nov. 10, 2011 Tr. 4, ECF No. 36.) She objected to the obstruction of justice enhancement and to the denial of a reduction for acceptance of responsibility, and presented testimony, including testimony from Brown himself, to support the objections. (Nov. 10, 2011 Tr. 4-19, 35-44, 51-53, 60-65.) The Court overruled the

---

[2] For purposes of these proceedings under § 2255, the Court has appointed counsel who was not Brown's trial counsel. Hereafter, all references to "counsel" or "Brown's counsel" or "trial counsel" will refer to the counsel who represented Brown in the underlying proceedings.

2

objections. (Nov. 10, 2011 Tr. 58, 65.) On November 16, 2011, the Court entered judgment against Brown and sentenced him to 240 months of imprisonment. (J. 2, ECF No. 29.) On direct appeal, the United States Court of Appeals for the Fourth Circuit affirmed this Court's judgment. United States v. Brown, 474 F. App'x 244, 244-45 (4th Cir. 2012).

On June 23, 2013, Brown filed his § 2255 Motion.[3] (§ 2255 Mot. 13.) Brown set forth the following claims for relief:

Claim One: "Petitioner's guilty plea was not knowing, intelligent, and voluntary, where it was tendered under misadvice of counsel, who erroneously insisted Petitioner was a career offender; and thus, facing a 'mandatory minimum sentence' or 'life imprisonment.' Counsel's 'gross misinformation about law' was tantamount to no counsel at all during critical stage of proceedings, i.e., constitutionally ineffective assistance of counsel." (Id. at 4.)

Claim Two: "That in light of intervening Supreme Court authority (Carachuri-Rosendo [v. Holder, 560 U.S. 563 (2010)], in existence prior to guilty plea), that has superseded controlling Fourth Cir. Precedent—remanding Simmons [v. United States, 649 F.3d 237 (4th Cir. 2011)] which in turn superseded [United States v.] Harp [406 F.3d 242 (4th Cir. 2005)]—defining qualifying 'prior offense' for the purpose of career offender as one 'punishable by imprisonment for more than one year,' Petitioner's counsel must be found as constitutionally ineffective where [s]he encouraged Petitioner to tender a

_____

[3] This is the date that Brown certified he placed the § 2255 Motion in the prison mail system for mailing to this Court. See Houston v. Lack, 487 U.S. 266, 276 (1988).

guilty plea under the erroneous presumption that he was a career offender (i.e., a failure to investigate), U.S.C.A. 6th. (Id. at 5.)

Claim Three:   "Trial counsel was constitutionally ineffective due to (1) her failure to raise proper objections and or motion the Court in opposition to enhancements for 'obstruction of justice' imposed pursuant to [United States Sentencing Guideline] § 3C1.1, and the Government's joint motion seeking to deny Petitioner's three point reduction for 'acceptance of responsibility'; and (2) that counsel had a conflict of interest, and therefore, could not represent the Petitioner in obstruction conduct (i.e., that Pet. acted with aid and advice of counsel), U.S.C.A. 5th & 6th. (Id. at 7.)[4]

Claim Four:   "Trial counsel was constitutionally ineffective due to her failure to motion the Court pursuant to the 'Fair Sentencing Act of 2010' ["FSA"] resulting in reductions in the Guidelines viz. [United States Sentencing Guideline] § 2D1.1 for cocaine base. Where permanent amendments implementing underlying act were promulgated

---

[4] In a Memorandum Opinion and Order entered on April 14, 2016, the Court:

construe[d] Claim Three as including three parts: (a) counsel was deficient for not arguing that the Government "failed to produce affirmative evidence establishing [William] Gant was in fact [Brown's] drug supplier; (b) counsel failed to advise Brown not to mail out the Federal Bureau of Investigation Form 302s or raise her complicity in the matter before the Court; and, (c) counsel was deficient for not arguing that the Government failed to prove that the 302 forms were posted on restroom walls at Westmoreland County convenience stores.

United States v. Brown, No. 3:11CR57, 2016 WL 1532241, at *1 n.3 (E.D. Va. Apr. 14, 2016) (internal citations omitted).

on April 6, 2011; effective as of Nov. 1, 2011. But, that Petitioner's sentencing hearing occurred on November 15, 2011, without benefiting from any of the Act's new proscriptions, e.g., like the crack cocaine to powder cocaine newly established 20 to 1 ratio; U.S.C.A. 6th." (Mem. Supp. Mot. to Amend 2, ECF No. 43.)

Claim Five:     "Trial counsel was constitutionally ineffective due to her failure to investigate, motion the Court, and or object to sentencing Court['s] alleged 'correction' of previously imposed term of supervised release (increased by 1 yr.); and further ineffective due to her failure to file a notice of appeal, and actual appeal of supervised release revocation proceeding after being requested to do so, where the alleged 'correction' has: (1) effect[ed] a substantive change to the original punishment and related judgment, (2) imping[ed] movant's 'fundamental right to finality of judgment' at the time original term was entered, and (3) violated movant's right to be free from double jeopardy in punishment, U.S.C.A. 5th & 6th." (Id. at 5 (alteration in original).)

By Memorandum Opinion and Order entered on April 14, 2016, the Court dismissed Claims Three (a), Three (c), and Four with prejudice, and dismissed Claim Five without prejudice. United States v. Brown, No. 3:11CR57, 2016 WL 1532241, at *9 (E.D. Va. Apr. 14, 2016). On April 26, 2016, the Court appointed James Ellenson to represent Brown in further proceedings with respect to Claims One, Two, and Three (b). (ECF No. 71, at 1.) The Court then scheduled an evidentiary hearing in this matter for August 17, 2016. (ECF No. 75, at 1.)

5

Before the evidentiary hearing, Brown explicitly abandoned his challenge to the voluntariness of his guilty plea. (ECF No. 79, at 1.) The Court subsequently determined that the following claims remained to be adjudicated and, because there was to be an evidentiary hearing, the Court designated those claims as "Hearing Claims." They are:

> Hearing Claim One: Trial counsel rendered ineffective assistance of counsel by failing to object to the finding that Brown qualified as a career offender.

> Hearing Claim Two: Trial counsel rendered ineffective assistance of counsel by providing Brown with copies of the FBI 302s and failing to advise him that he could be charged with obstruction of justice if he mailed copies of those to his mother.

(ECF No. 81, at 7.) The Court dismissed all prior claims. (Id.)

In an Order entered on August 19, 2016, the Court noted that "one of the issues [addressed at the evidentiary hearing] involves the length of sentence imposed by the Court of Common Pleas of Montgomery County, Pennsylvania (Criminal Division) in Commonwealth of Pennsylvania v. Louis A. Brown, Criminal Docket Number 33-99" (ECF No. 83, at 1), and that the available copy of the sentencing document entered in that case was not a complete copy (id.). Accordingly, the Court ordered the Government to "secure a complete and legible copy of the applicable sentencing

document together with all available information, from the Court or the Probation Office, or any other source, pertinent to accurately identifying the sentence that actually was imposed in the Pennsylvania case . . . ." (<u>Id.</u>)  The Government submitted those documents on September 15, 2016.  (ECF No. 85.)  Brown, through counsel, filed a Supplemental Brief Concerning Ineffective Assistance of Counsel and Position of Louis Brown as to Sentencing on October 17, 2016.  (ECF No. 86.)  The Government filed its Response on October 18, 2016.  (ECF No. 87.) Brown filed a Reply on November 7, 2011.  (ECF No. 88.)  An evidentiary hearing was held on August 26, 2016.  This matter is therefore ripe for adjudication.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  To satisfy the deficient performance prong of <u>Strickland</u>, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" <u>Burch v. Corcoran</u>, 273 F.3d 577, 588 (4th Cir. 2001) (quoting <u>Strickland</u>, 466 U.S. at 689).  The prejudice component requires

a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

### A. Hearing Claim One: Trial Counsel's Performance Regarding Career Offender Designation

In Hearing Claim One, Brown contends that trial counsel rendered ineffective assistance by failing to object to the Probation Officer's finding that Brown qualified as a career offender. Specifically, Brown alleges that his conviction, in the Court of Common Pleas for Montgomery County, Pennsylvania for Delivery of a Controlled Sentence on May 6, 1999, was improperly counted as a predicate offense for the career offender finding. (See Mem. Supp. § 2255 Mot. 10, ECF No. 41.)

#### 1. Background

Before sentencing, the Probation Officer concluded that Brown qualified as a career offender, stating:

> The defendant qualifies for a sentence enhancement under the Career Offender section, as defined in U.S.S.G. § 4B1.1, by virtue of being 18

8

years old at the time of the instant offense of
conviction, the instant offense being a felony
conviction for a controlled substance offense, and the
defendant having at least two prior felony convictions
of either a crime of violence or a controlled
substance offense, to wit: Delivery of a Controlled
Substance on May 6, 1999; and Use of a Firearm in or
During a Crime of Violence on April 13, 2000.

(PSR ¶ 70.) With respect to Brown's 1999 conviction, the
Probation Officer noted that Brown was sentenced to "8 months to
1 year, 11 months of imprisonment; 2 years of probation." (Id.
¶ 54.)

During the sentencing hearing on November 10, 2011, the
parties agreed that Brown was a career offender. (Nov. 10, 2011
Tr. 4.) Before application of the career offender designation,
Brown's criminal history placed him in Criminal History Category
IV. (PSR, Wksht. D at 1.) However, application of the career
offender designation placed Brown in Criminal History Category
VI. (Id.) Brown's Sentencing Guidelines range called for 262
to 327 months of incarceration; however, he could only receive a
maximum of 240 months because of the statutory maximum sentence
provided by 21 U.S.C. § 841(b)(1)(C). (Id.)

As noted above, by Order entered on August 19, 2016, the
Court directed the Government to obtain a complete copy of the
applicable sentencing document relating to Brown's 1999
conviction, as well as all other available information
"pertinent to accurately identifying the sentence that actually

9

was imposed in the Pennsylvania case . . . ."  (ECF No. 83, at 1.)  The records that the Government has provided establish that, on May 6, 1999, the Court of Common Pleas for Montgomery County, Pennsylvania sentenced Brown to 8-23 months of incarceration.  (ECF No. 85-1, at 2, 11; ECF No. 85-2, at 2; ECF No. 85-3, at 1.)

### 2.  Analysis

Under the Sentencing Guidelines,

> [a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

United States Sentencing Guidelines Manual § 4B1.1(a) (U.S. Sentencing Comm'n 2010) ("USSG").  The "determination of whether convictions are counted under § 4B1.1 is governed by the provisions of [USSG] § 4A1.2."  United States v. Romary, 246 F.3d 339, 342 (4th Cir. 2001) (citation omitted).  Section 4A1.2(e) provides in pertinent part:

### Applicable Time Period

> (1)  Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted.  Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that

> > resulted in the defendant being
> > incarcerated during any part of such
> > fifteen-year period.
>
> (2)   Any other prior sentence that was imposed
> within ten years of the defendant's
> commencement of the instant offense is
> counted.
>
> (3)   Any prior sentence not within the time
> periods specified above is not counted.

USSG § 4A1.2(e)(1)-(3).   "For the purposes of applying § 4A1.1(a), (b), or (c), the length of a sentence of imprisonment is the stated maximum . . . . That is, criminal history points are based on the sentence pronounced, not the length of time actually served."   Id. § 4A1.2 app. n.2 (citation omitted) (emphasis omitted).

Brown received a sentence of 8 to 23 months of imprisonment for the 1999 conviction.   Thus, Brown received a sentence "exceeding one year and one month" for purposes of § 4A1.2(e)(1).   Furthermore, this sentence was imposed within fifteen years of Brown's commencement of the offense of conviction in this case, see id., because Brown's earliest relevant conduct in this matter occurred in July 2010 (PSR at 12).   Thus, the Probation Officer properly counted Brown's 1999 conviction as a predicate offense for purposes of the career offender designation.   Because Brown had two prior felony convictions that qualified as predicate offenses, he was

11

properly sentenced as a career offender.  Thus, on this record, Brown has not (indeed, could not) shown that, by agreeing that Brown was properly categorized as a career offender, trial counsel was ineffective.  Moreover, Brown has not demonstrated any prejudice from trial counsel's concession.  Accordingly, Hearing Claim One will be dismissed.

**B.  Hearing Claim Two: Counsel's Performance Regarding Obstruction Of Justice Enhancement**

In Claim Two, Brown contends that trial counsel rendered ineffective assistance by providing Brown with copies of the FBI 302s and failing to advise him that he could be charged with obstruction of justice if he mailed copies of those to his mother.

**1.   Sentencing Proceedings**

Before sentencing, the Probation Officer recommended that Brown receive a two-level enhancement for obstruction of justice.  (PSR ¶ 29.)   The Probation Officer based this recommendation on the following:

> Through discovery, copies of Federal Bureau of Investigation (FBI) Forms 302 were received by the defendant.  These forms identify information provided by cooperating sources, most importantly the sources' identities.  Since the defendant's guilty plea was accepted by the Court on June 27, 2011, the defendant mailed three copied sets of the Forms 302 to his mother.  Each set was labeled as to the defendant's intended recipient to include his drug supplier [William Gant] and two other individuals.  The three packages were delivered by mail to the defendant's

12

mother and were distributed as the defendant
requested. In a recorded telephone call from the
jail, the defendant explained to an individual that he
wanted the identities of who had been "telling" on him
known to others in the community, specifically, his
drug supplier. Based upon information provided by FBI
SA Bruce Hough, the defendant's drug supplier received
one of the copied sets, who in turn contacted one of
the government's witnesses. In addition, the forms
were posted on restroom walls in convenience stores
throughout Westmoreland County. . . .

(Id.) The Probation Officer further recommended that, because

of this conduct, Brown should not receive any reduction for

acceptance of responsibility. (Id. ¶ 30.)

Trial counsel filed objections to the PSR, arguing that

Brown's act of mailing the 302s to his mother did not constitute

obstruction of justice and that Brown should still receive the

three-level reduction for acceptance of responsibility. (ECF

No. 22, at 3-6.) During Brown's sentencing hearing, trial

counsel presented testimony from Linda McGrew, an investigator

for the Federal Public Defender's office, to support the

objections. (Nov. 10, 2011 Tr. 9-19.) McGrew testified that,

after Brown's mother received the 302s, she provided copies to

Gant on a night when he was playing cards at Brown's mother's

house. (Nov. 10, 2011 Tr. 11.) During cross-examination of

Government witness Special Agent Bruce Hough, trial counsel

established that she had received the 302s that were ultimately

provided to Brown from the Government as part of discovery.

13

(Nov. 10, 2011 Tr. 28-29.)    After the Court overruled the objection, but, before sentence was imposed, trial counsel asked the Court to reopen the record to hear testimony from Brown on the issue.   (Nov. 10, 2011 Tr. 60-62.)   That motion was granted and Brown testified in pertinent part:

> [MS. MAGUIRE] And was it your intent when you sent the document to Mr. Gant to obstruct justice in any way?
> [BROWN]   No, it was not, and also, what he's saying, I ran copies off, you know, I ran copies off and sent them to each person individually, that's not true.   I informed—I got three copies from my attorney, but before I mailed them to each person, before I mailed them to each person, I had already told them I was going to mail them to each person.   If it would have been obstruction of justice, she should have told me.
> I made it plain as day that when I—because me and the guy Gant was real good friend[s], so what I done, I made it plain as day.   I stood up in this Court and asked the people at first, do it have anything to do with me telling, because me and the man were such good friends, but when I mailed my papers out, I mailed my papers out, and I told my attorney I was sending one to my mother, one to my friend, and one to Gant, but I made it plain—
> THE COURT One to whom?
> [BROWN]   One to Gant, but I made it plain as day before I sent them out that I'm sending these papers out to Gant to let Gant know that the people is coming to talk to me, and I can't lie when they come and talk to me, I have to tell them how it is.
> That's what I explained to my attorney before I sent Gant the paper.   I told her that I was sending Gant the paper to let him know two agents is supposed to come and see me, and when the agents come to see me, I cannot lie, I got to tell them like it is.
> I mean, I didn't send the papers for to try to threaten nobody.   I had already been through all of that.   I was letting them know when the people came to see me—as a matter of fact, I had already done told—I

already told my mother to tell him.   But I sent the
papers—plain as day, I sent the papers to let him know
that when the two agents came to come and see me, that
I was going—that I was going to tell the agents—I was
going to tell the agent what it was, and me and my
attorney talked about that.

(Nov. 10, 2011 Tr. 60-62.)   The Court concluded that Brown's

testimony did not "change[] the ruling on obstruction of justice

at all . . . ."  (Nov. 10, 2011 Tr. 65.)

### 2.   August 17, 2016 Evidentiary Hearing Testimony

At the evidentiary hearing under § 2255, counsel for the

Government represented that Brown's criminal proceedings were

not governed by an agreed discovery order restricting the

dissemination of discovery to defendants.   Counsel for the

Government noted that "this case, and I think one other, was

really what precipitated the change in our agreed discovery

order to make it clear that [counsel] couldn't leave copies with

the defendant, much less mail them out."

Trial counsel for Brown testified that the 302s were "part

of just the general discovery packet" that the Government

provided to her.   The name of the individual who was

interviewed, Mr. B***, was not redacted.   The 302s "reflect[ed]

that Mr. B[***] state[d] that he would buy crack cocaine from

Brown."   It was "quite clear" to trial counsel and Brown that

Mr. B*** was cooperating with the Government.   Trial counsel

confirmed that there was no agreed discovery order or protective

order prohibiting dissemination of these documents. (Aug. 17, 2016 Tr. 45.)

Before the guilty plea hearing on June 27, 2011, Brown asked trial counsel for copies of the 302s that had been included in discovery. (Aug. 17, 2016 Tr. 22, 41.) On June 13, 2011, trial counsel mailed to Brown a letter along with the three copies of the 302s. (Aug. 17, 2016 Tr. 22.) At the time, trial counsel knew that Brown intended to send the copies of the 302s to his mother. (Aug. 17, 2016 Tr. 24, 41.) She did not recall whether she considered why Brown would need three sets of the 302s and did not advise Brown whether he could be subject to an enhancement for obstruction of justice and could lose credit for acceptance of responsibility. (Aug. 17, 2016 Tr. 24, 42.) She did not believe that providing copies of the 302s for Brown to mail to his mother "would be obstruction in and of itself[.]" (Aug. 17, 2016 Tr. 49.)

At the time that she provided the documents to Brown, trial counsel knew that Gant was "[a] potential target in the case." She did not recall whether, when Brown asked for the copies, he had "mention[ed] . . . his intention to pass them on to Mr. Gant[.]" But, she "hope[d]" that she would have advised Brown not to send the 302s to Gant if he had indicated that he planned to do so. (Aug. 17, 2016 Tr. 43-44.) She would have asked "why

16

would you send them to Mr. Gant.  And, you know, that's probably not a good idea."  (Aug. 17, 2016 Tr. 44.)  She "certainly hope[d] [that she] would" have advised Brown "that he could get into trouble for that kind of thing given that Mr. Gant had been identified as part of this case[.]"  (Aug. 17, 2016 Tr. 44.)

On July 21, 2011, the Government received a cooperation agreement signed by Brown.  However, on August 9, 2011, the prosecuting Assistant United States Attorney, David Schiller, advised that the Government did not wish to interview Brown because it had been made aware of the obstructive behavior.

Trial counsel subsequently had conversations with Brown about why he wanted to send copies of the 302s to his mother after learning of the Government's intent to seek an enhancement for obstruction of justice.  At a meeting with Brown on August 18, 2011, Brown told trial counsel that he wanted his family to know "who was telling on him so [they] would know what was happening.  Sent copy for brother and sister to read.  Brother wants to know who told so they wouldn't have deal with him."

Schiller also testified at the evidentiary hearing.  He testified that he would not have sought the obstruction enhancement if Brown had only mailed the copies of the 302s to his mother.  Schiller confirmed that there was no order restricting the dissemination of discovery in this matter,

17

stating that "as a result of this case, and I think one other .
. . we started putting in a protective paragraph limiting
dissemination."

### 3. Analysis

#### a. Deficient Performance

To determine whether trial counsel rendered ineffective
assistance to Brown, the Court must first determine whether
Brown has overcome the "'strong presumption' that counsel's
strategy and tactics fall 'within the wide range of reasonable
professional assistance.'" Burch, 273 F.3d at 588 (quoting
Strickland, 466 U.S. at 689). "Prejudice in the context of
sentencing generally requires the litigant to demonstrate a
reasonable probability that, but for counsel[']s deficient
performance, he would have received 'less prison time.'" United
States v. Hill, No. 3:07CR407, 2013 WL 3816741, at *3 (E.D. Va.
July 22, 2013) (citing Missouri v. Frye, 132 S. Ct. 1399, 1409
(2012)). As discussed below, Brown has met his burden of
demonstrating such a reasonable probability.

First, when she supplied three copies of the 302s, trial
counsel knew that Brown intended to send the copies to his
mother. And, by that time, she was aware that Gant was "[a]
potential target in the case," (Aug. 17, 2016 Tr. 42), and that
B*** was cooperating with the Government (Aug. 17, 2016 Tr. 48).

Given Gant's close relationship with Brown's family, trial counsel was obliged to assess whether Brown's mother would pass on the 302s and the information contained therein to Gant. Yet, she provided the copies of the 302s to Brown without asking questions and without providing advice about the possibility of obstruction of justice and the concurrent loss of acceptance of responsibility.

Moreover, Brown's criminal history establishes that his modus operandi involves retaliation against those who he believes have "set" him up. In 2000, Brown was convicted in this Court of possession of a firearm by a convicted felon and use of a firearm in or during a crime of violence. (PSR ¶ 55.) These charges were based upon the following facts:

> On May 8, 1998, the victim, Bernard L[**], was approached by the defendant. Mr. L[**] asked the defendant why he was telling people that Mr. L[**] had "set" him up. The defendant denied making the statements and kept stating "why do you carry me like that?" and they parted ways. On May 9, 1998, at the People's Express Convenience Store in Kinsale, Virginia, Mr. L[**] was approaching a friend when he observed a vehicle containing the defendant. The defendant began questioning Mr. L[**] and exited the vehicle. When within 5 feet of each other, the defendant pulled a sawed-off shotgun from his pants and cocked the hammer. While Mr. L[**] was raising him arm to defend himself, the shotgun rested on the upper portion of Mr. L[**]'s arm and discharged. Mr. L[**] then turned and ran. The defendant got back into his vehicle, with his sister driving, and left the parking lot.

(Id.)   From this, trial counsel should have been aware that
Brown has a history of retaliating against those whom Brown
believes have turned against him.   And, on this record, she
should have questioned Brown about his intentions for the 302s
before providing him with copies of them.

That conclusion is not altered by Schiller's testimony that
there was no order entered in this matter that governed the
dissemination of discovery or that he would not have sought an
obstruction enhancement had Brown only mailed the copies of the
302s to his mother.   That is so because, wholly apart from
whether there were limits on the dissemination of discovery,
trial counsel should have assessed the potential impact of
releasing the name of a cooperating witness and the names of
those whom the Government was targeting for prosecution to
individuals close to those targets.   Furthermore, even if the
Government ultimately had not sought the obstruction
enhancement, trial counsel should still have discussed with
Brown the potential implications of sending the 302s to his
mother.

The Court remains "distressed . . . that [trial] counsel
chose to provide Brown copies of the 302s, which contained
'information provided by cooperating sources, most importantly
the sources' identities.'"   United States v. Brown,   No.

3:11CR57, 2016 WL 1532241, at *7 (E.D. Va. Apr. 14, 2016)
(quoting PSR ¶ 29). Had trial counsel not provided copies of
the 302s to Brown, "Brown would have been unable to have
provided his supplier with concrete evidence of the individuals
cooperating with the Government in an effort to root out the
drug trafficking in Westmoreland County." Id. For the
foregoing reasons, the Court concludes that trial counsel's
performance with respect to the 302s was deficient and did not
"fall 'within the wide range of reasonable professional
assistance.'" Burch, 273 F.3d at 588 (quoting Strickland, 466
U.S. at 689).

### b. Prejudice to Brown

Because Brown has met his burden on the first prong of the
Strickland test, the Court must also consider whether "there is
a reasonable probability that, but for [trial counsel's]
unprofessional errors, the result of [Brown's sentencing] would
have been different." Strickland, 466 U.S. at 694.

With an adjusted offense level of 34 and a Criminal History
Category of VI, Brown's Sentencing Guidelines range called for
262 to 327 months of incarceration; however, the sentence of
imprisonment was limited to 240 months because of the statutory
maximum. (PSR, Wksht. D, at 1.) Had trial counsel not provided
Brown with copies of the 302s for Brown to mail to his mother,

Brown likely would have:  (1) still been able to cooperate with the Government;  (2) received a three-point reduction for acceptance of responsibility, and (3) not received a two-point enhancement for obstruction of justice.

If Brown had not received the obstruction enhancement and had received a three-point reduction for acceptance of responsibility, his adjusted offense level would have been 29. With an offense level of 29 and a Criminal History Category of VI, his Sentencing Guidelines range would have called for 151 to 188 months of incarceration.[5]  See USSG Sentencing Table (2010). Given the disparity between the ranges, calculated with, and without, the obstruction enhancement, Brown has sufficiently demonstrated "a reasonable probability that, but for counsel's unprofessional errors, the result of [his sentencing] would have

---

[5] Counsel for Brown contends that Brown should also receive a two-point reduction under the Fair Sentencing Act ("FSA"), thereby resulting in an adjusted offense level of 27.  (ECF No. 86 at 2.)  Counsel argues that with an adjusted offense level of 27 and a Criminal History Category of VI, Brown's Sentencing Guidelines range calls for 130-162 months of incarceration.  The Court has previously noted, however, that "at the time of Brown's sentencing on November 10, 2011, the United States Sentencing Guidelines Manual already reflected amended drug quantity amounts in the base offense levels brought about by directives in the FSA."  United States v. Brown, No. 3:11CR57, 2016 WL 1532241, at *8 (E.D. Va. Apr. 14, 2016) (citation omitted).  Moreover, because Brown's Sentencing Guidelines range was driven by the career offender status rather than a determination of drug weight, the FSA has no impact on Brown's Guidelines range.  See United States v. Wilkerson, 492 F. App'x 447, 450 (4th Cir. 2012).

been different." Strickland, 466 U.S. at 694; see Hill, 2013 WL 3816741, at *3. Because Brown has demonstrated that trial counsel rendered ineffective assistance with respect to the 302s, the Court will grant relief on Hearing Claim Two.

"[Section] 2255 authorizes the district court to take one of four distinct courses in remedying a successful § 2255 petitioner's unlawful sentence: (1) 'discharge the prisoner,' (2) 'grant [the prisoner] a new trial,' (3) 'resentence [the prisoner]', or (4) 'correct the [prisoner's] sentence.'" United States v. Hadden, 475 F.3d 652, 667 (4th Cir. 2007) (alterations in original) (quoting 28 U.S.C. § 2255(b)). As discussed above, the Court has concluded that Brown's Sentencing Guidelines range would have been 151 to 188 months had he retained his three-point reduction for acceptance of responsibility and had he not received a two-point enhancement for obstruction of justice. Accordingly, the appropriate remedy is to vacate Brown's sentence and conduct a full resentencing. The Court will therefore schedule a resentencing in this matter at its earliest convenience.

23

## III. CONCLUSION

For the foregoing reasons, Hearing Claim One will be dismissed. The Court will grant relief with respect to Hearing Claim Two. The Court will set the matter for a resentencing.[6]

The Clerk is directed to send a copy of the Memorandum Opinion to counsel of record.

It is so ORDERED.

/s/   _REP_
_____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: November 15, 2016

---

[6] An "order, which contemplate[s] the petitioner['s] future resentencing[] but [does] not actually sentence the petitioner[], [is] a non-appealable interlocutory order under § 2255." Hadden, 475 F.3d at 662 (citing Andrews v. United States, 373 U.S. 334, 339-40 (1963)). Thus, until the Court "actually resentence[s] the petitioner[], the § 2255 proceeding [is] not complete, and no appeal [can] be taken from the . . . [C]ourt's order contemplating, but not accomplishing the prisoner['s] resentencing." Id. (citing Andrews, 373 U.S. at 338; United States v. Stitt, 459 F.3d 483, 485 (4th Cir. 2006)).